WICHITA LAND AND CATTLE COMPANY ET AL. V. V. S. J. WARD.
No. 23.

1. **Stale Demand — Coverture — Tacking Disabilities.** — A married woman asserted by suit an equitable claim to land, and in reply to defendant's plea of laches and stale demand, pleaded her coverture. The cause of action accrued first to her ancestor in his lifetime, and by analogy to the statute of limitation which prohibits the tacking of disabilities, laches did not at his death then cease to be imputed to her because of her coverture.

2. **Parties to Suit Annulling Judgment—Guardian.**—There was a judgment against H. in his representative capacity as guardian of W., foreclosing a vendor's lien on land deeded to H. as such guardian, and under this judgment the land was sold. W., after coming of age, sued the purchasers for the land, alleging such judgment and sale to be void. *Held*, that H. was not a necessary party to this latter suit.

3. **Evidence — Deed—Common Source of Title.**—A defendant is not entitled to exclude from evidence, for want of due proof of its execution, a deed offered by plaintiff, where it is shown by abstract of title filed under the statute in that suit by the defendant, and offered in evidence by the plaintiff, that such deed is also a link in defendant's chain of title, and a common source of title of both parties.

4. **Guardian's Sale of Ward's Land Voidable, when.**—Where under a judgment in a suit against one wrongfully acting as guardian there was a sale of the minor's land for about one-fourteenth of its value, such minor was held entitled by suit within a reasonable time after attaining his majority to set aside such proceedings and recover the land from the purchaser at such sale and his vendees

APPEAL from Archer.  Tried below before Hon. P. M. STINE.

*R. F. Arnold* and *W. W. Flood*, for appellant Wichita Land and Cattle Company.— 1. T. C. Haggart was a neccessary party to this suit. There can be no proper bill to review or proceeding to vacate a judgment at any term of a court subsequent to the one in which such judgment was rendered, without making all those who were parties to the judgment sought to be vacated also parties, either plaintiffs or defendants, to the suit seeking to review or vacate any such proceeding.  Williams v. Nolan, 58 Texas, 708; Ship Channel Co. v. Bruly, 45 Texas, 6; Williams v. Bankhead, 19 Wall., 571; Story v. Livingston, 13 Pet., 375.

2. The judgment ordering the sale of the land was properly rendered in the former suit, jurisdiction having been acquired over T. C. Haggart, who had bound himself individually, and not in any representative ca-

pacity, though using words merely descriptio personæ; and judgment might have been rendered against him personally, rather than making it in rem, as was done. Mech. on Agency, secs. 409–411; Street v. Ins. Co., 75 Am. Dec., — and note; Houston v. Ward, 8 Texas, 124.

*F. E. Dycus*, for appellants N. A. and L. C. Lockhart and Elizabeth White.—The court erred in adjudging the claim of Mrs. Elizabeth White, intervenor, to be a stale demand. When a party labors under some disability, and the statute of limitation does not run, the defense of stale demand is not in point. Merrill v. Roberts, 64 Texas, 441; Reed v. West, 47 Texas, 248; Wimberly v. Pabst, 55 Texas, 591.

*G. H. Plowman* and *Crawford & Crawford*, for appellee.—1. T. C. Haggart was not a necessary party to this suit. One who has no interest in a judgment is not a proper or necessary party to a proceeding to vacate, or obtain other relief from, the judgment. Hudson v. Morriss, 55 Texas, 604; Jones v. Smith, 55 Texas, 383.

2. The judgment foreclosing the vendor's lien, the order of sale, and sheriff's sale thereunder, in the case of Turney and Ward v. Haggart and Ward, in the District Court of Archer County, are absolutely void, and the proceedings did not divest appellee of his title to the land. Messner v. Giddings, 65 Texas, 301; Emmons v. Williams, 28 Texas, 776; Rose v. Newman, 26 Texas, 131; Collins v. Miller, 64 Texas, 118.

3. The deed from Turney and Ward, administrators, was properly admitted as a common source, this being shown by appellants' abstract of title, on file in the case. Defendants, by claiming under a certain title, affirm its validity. Glover v. Thomas, 75 Texas, 506; Garner v. Lasker, 71 Texas, 434. That defendant does not admit or allege that he claims under a common source will not deprive plaintiff of the right to make such proof. Keys v. Mason, 44 Texas, 142; Garner v. Lasker, 71 Texas, 434.

4. The court correctly held that the claim of the intervenors was a stale demand. An equitable claim to land is stale after the lapse of ten years. Carlisle v. Hart, 27 Texas, 353; Montgomery v. Noyes, 73 Texas, 209.

HEAD, ASSOCIATE JUSTICE.—This case was tried before the court without a jury, and the facts are correctly set forth in the special findings filed in the court below, as follows:

The Board of Land Commissioners of Shelby County issued certificate No. 472 to H. Corzine as assignee of John Ransom, for one league and labor of land, dated May 19, 1838, and transferred on May 23, 1838, to F. M. Weatherred by said Corzine, by written transfer upon the back thereof. This certificate was cancelled by the Commissioner of the Gen-

eral Land Office on April 23, 1853.    Certificate No. 2817-2918, for one league and labor of land, was issued to F. M. Weatherred as assignee of H. Corzine, in accordance with an act of the Legislature of Texas, approved February 7, 1853, granting to H. Corzine, his heirs or assigns, a league and labor of land; said special act of the Legislature providing that no certificate should issue if a certificate for a like quantity of land had been previously issued.

On July 3, 1854, certificate No. 3561-3662 (for unlocated balance of said certificate No. 2817-2918) for 17,553,925 square varas of land, was issued to Francis M. Weatherred, assignee of H. Corzine, said certificate being that by virtue of which the land in controversy was located.    The land in controversy was patented to W. R. D. Ward, assignee of H. Corzine, May 10, 1855.

H. Corzine was a married man, and died without issue in June, 1840. His father was dead at the time of taking Elizabeth White's deposition, August 8, 1888, but there is no proof as to the date of his father's death. His mother died in 1869.    H. Corzine's wife was dead August 8, 1888, but the date of her death is not shown by the evidence.    His only brother is S. S. Corzine, and his sisters were N. A. Lockhart, Elizabeth White, S. J. Saulsbury, and Mary Green.    Intervenor Elizabeth White was married to Thomas A. White in March, 1854, and he died in 1884.    N. A. and L. C. Lockhart were married in 1846, since which time N. A. Lockhart has been a married woman.

W. R. D. Ward, the patentee of the land in controversy, died in 1868. Virgil Ward, the father of plaintiff, was one of the children of W. R. D. Ward, who had five children in all.    Virgil Ward died September 21, 1864.    Virgil Ward had one child, the plaintiff in this suit, who was born September 29, 1864.

Administration was opened on the estate of W. R. D. Ward in Harrison County, in 1868, and A. G. Ward and A. G. Turney were duly appointed administrators of his estate, and were duly qualified as such.

Upon the application of A. G. Ward, one of the administrators, the Probate Court of Harrison County, at its January Term, 1877, appointed commissioners to partition the lands belonging to W. R. D. Ward's estate, who reported to the following March Term of said court that the land in controversy, together with other lands of said estate, was not susceptible of partition, and the court thereupon ordered a sale of the same. The land in controversy was sold by the administrator to T. C. Haggart, as guardian of the person and estate of plaintiff, and the sale reported to the court, and the court duly approved said sale at the May Term, 1877.

The said administrators executed and delivered the original deed to T. C. Haggart, as guardian of plaintiff's estate, to the land in controversy, introduced in evidence, in pursuance of said order of court.    A part of the purchase price for said land was paid in cash out of the estate of

plaintiff, and T. C. Haggart, describing himself as guardian of the person and estate of said minor, executed a note for the balance of the purchase money, payable to said administrators, who brought suit upon said note, and to foreclose the vendor's lien, in the District Court of Archer County, in October, 1881, joining with said Haggart the plaintiff herein as defendant therein. In that suit Haggart answered as guardian of plaintiff, December 12, 1881. Plaintiff did not answer, and the judgment introduced in evidence was rendered April 17, 1882. This judgment was for $395.35, and foreclosed the vendor's lien on all the land in controversy. Sale was made under the order of sale issued upon said judgment introduced in evidence, on the ———— day of June, 1882, to Perry Webster, for the sum of $427.42. At the date of the institution of said suit the plaintiff herein was a minor, and guardianship was pending on his estate in the Probate Court of Galveston County, and Fannie A. Haggart was the guardian of his person and estate, duly appointed by said court, and T. C. Haggart was not then, and was not at any time, the guardian of the person or estate of plaintiff. T. C. Haggart had been the husband of Fannie A. Haggart, but had been divorced before the institution of said suit.

The land in controversy at the date of sale was worth $6000. Perry Webster and Anna Webster transferred the land in controversy to John H. Stone for $3109.50, with covenant of warranty of title only as to Perry Webster, by deed dated July 22, 1882.

John H. Stone transferred the land in controversy to the Wichita Land and Cattle Company by deed dated August 14, 1882.

Defendant Wichita Land and Cattle Company went into possession of the land in controversy in August, 1882, and has remained in possession, using and occupying the same, ever since.

The amount of the lien on the land in controversy paid off and discharged by Perry Webster at the date of his purchase at sheriff's sale is $427.42, which, with interest to date, amounts to the sum of $658.14, and the value of the use and occupancy by the defendant of the land in controversy since two years before the institution of suit is $658.14.

Defendant claims title to the land in controversy under administrators' deed of A. G. Ward and A. G. Turney, and under sheriff's deed introduced in evidence.

The intervenors, N. A. Lockhart and Elizabeth White, claim as heirs of Herschel Corzine. It will be seen from the conclusions of fact that the certificate was issued to F. M. Weatherred as assignee of Corzine, on the 23d of April, 1853, thereby placing the legal title thereto in him. The patent to the land in controversy was issued to Ward, assignee of Corzine, on May 10, 1855, thereby placing the legal title to this particular tract of land in Ward on that date. Looking to the face of the papers alone, it is therefore plain that the claim of these intervenors was a stale

demand long before the filing of their plea of intervention.    Wimberly
v. Pabst, 55 Texas, 591; League v. Rogan, 59 Texas, 427; Montgomery
v. Noyes, 73 Texas, 204.   The intervenors, however, undertake to ex-
cuse this long delay in the assertion of their equitable claim, by showing
that Mrs. Lockhart has been a feme covert since 1846, and that Mrs.
White was a feme covert from March, 1854, to 1884, and that they were
ignorant of this land being claimed by any one as the assignee of Cor-
zine; also, that Archer County, where the land was situated, was a
wild, uninhabited region, and that from 1874 to 1879 it was not attached
to any county for judicial purposes, and there was no place where suit
could be brought; and no actual possession adverse to intervenors' was
had until 1883.   Intervenors filed their plea of intervention on the 29th
of August, 1887, and their cause of action appearing on its face to be
stale, the burden was upon them to allege and prove the facts that would
excuse the delay.   Hillebrant v. Brewer, 6 Texas, 51.

In this case it is made to appear that Corzine's mother did not die un-
til 1869, and the only evidence as to the date of his father's death is
that he was dead on the 8th of August, 1888.   It is therefore not shown
that both of his parents were not living at the date of the issuance of the
patent to Ward as assignee in 1855; and inasmuch as intervenors were
only sisters of Corzine, they inherited nothing from him, and only be-
came entitled to an interest in the land upon the death of one of their
parents.   Whether the inheritance from Corzine be governed by the law
of 1840, in force at the time of his death, or by that of 1848, in force at
the time the certificate was granted, brothers and sisters inherited noth-
ing if both parents were living.   It will therefore be seen that the cause
of action accrued to the parents of Corzine during their lifetime; and in
analogy to the statute of limitation, which prohibits the tacking of disa-
bilities, and continues to run after it has once commenced, notwithstand-
ing intervening disabilities, we are of opinion that upon their death
laches did not cease to be imputed to intervenors by reason of their
coverture, and that therefore the claims of both of them should be con-
sidered stale demands, even if we exclude from our consideration the
time during which the statute of limitation was suspended by law, and
also the time intervening between 1874 and 1879, during which it is al-
leged that Archer County was not attached to any other county for judi-
cial purposes.   McDonald v. McGuire, 8 Texas, 365; White v. Latimer,
12 Texas, 61; Hunton v. Nichols, 55 Texas, 230.   It will therefore be
unnecessary for us to consider the question as to whether or not the spe-
cial act certificate was properly issued to Weatherred as assignee of Cor-
zine under the act of 1853.

From an inspection of the pleadings in this case it will be seen that the
principal object of this suit is to annul a judgment rendered in the Dis-
trict Court of Archer County at its April Term, 1882, in favor of A. G.

Ward and A. G. Turney, administrators of W. R. D. Ward, deceased, against T. C. Haggart and appellee V. S. J. Ward, for the sum of $395.35, and foreclosing the vendor's lien upon the land in controversy. The grounds relied upon by appellee for annulling this judgment are, in effect, that it was obtained by fraud; that at the time of its rendition appellee was a minor only about 17 years of age, and no guardian ad litem was appointed by the court to represent his interests; that Thos. C. Haggart, though sued as his guardian, was not in fact then and has never been such guardian; that at the sale under this judgment the sum realized was a grossly inadequate consideration for the land. Appellee asks that for these reasons the judgment be declared absolutely null and void; but in the alternative prays that it, with the sale thereunder, be set aside, and offers to account for the amount paid by the purchaser at said sale.

In this suit T. C. Haggart is not made a party, and the first assignment of error by appellant complains of the action of the court in overruling its special exception to appellee's petition for this omission, and we have had great difficulty in arriving at a satisfactory conclusion as to whether or not Haggart is · a necessary party in the suit to vacate the judgment rendered against him as above set forth.

It is not to be denied that in a suit to review or annul a judgment all of the parties to such judgment, or their privies, are necessary parties. York v. Cartwright, 42 Texas, 136; Williams v. Nolan, 58 Texas, 712; Slaughter v. Owens, 60 Texas, 671.

In a case, however, where the owner of a judgment has assigned or transferred it he ceases to be a necessary party, and his assignee must be sued in his stead (Hudson v. Morriss, 55 Texas, 604); and in case one of the parties to the judgment be dead, his heirs or legal representatives are made parties in his stead. And so we think in this case, the judgment being against Haggart only in his representative capacity as guardian of the appellee V. S. J. Ward, when such minor became of age Haggart ceased to have any further interest in the judgment, and appellee was properly considered as his representative in this suit. It was appellee's land that was sold for the payment of this judgment, and upon his arrival at majority he alone was interested in setting aside this sale, and we are therefore of opinion that the court did not err in holding that Haggart was not a necessary party. Jones v. Smith, 55 Texas, 383.

Upon the trial in the court below the deed from A. G. Ward and A. G. Turney, administrators of W. R. D. Ward, deceased, to T. C. Haggart, guardian of the person and estate of V. S. J. Ward, was admitted in evidence over the objection of appellant, that it was not properly registered, and its execution had not been proven. Appellant had, however, previous to the trial, been required by appellee to file an abstract of its title under our statute, and in this abstract it had given this deed as one

of the links in its chain of title, and had filed a certified copy of it with the papers; and this abstract and copy were admitted in evidence, also over the objection of appellant, to prove that the parties hereto claimed under this deed as a common source of title. It seems to have been held in Evans v. Foster, 79 Texas, 50, that this abstract was properly admitted for this purpose, and it will therefore be unnecessary for us to decide as to whether or not the execution of the deed was sufficiently proven to authorize its admission in the first instance.

Appellant in his petition first seeks to have the judgment against him declared an absolute nullity, but he also prays, in case the court decides it necessary for him to refund to appellant the amount paid by the purchaser at the sale thereunder, that the use of the land while in the possession of appellant be allowed as an offset against this amount, and this was the relief granted by the court. As we are of opinion that the petition of appellee showed good equitable grounds for having this judgment and sale set aside, it will not be necessary for us to pass upon the question as to whether or not the judgment against him during his minority, while guardianship was pending, without making his regular guardian a party, was void or only voidable. If he had been without a guardian, the failure to appoint a guardian ad litem would seem to be only an irregularity that would render the judgment voidable, but not void. Montgomery v. Carlton, 56 Texas, 431; McAnear v. Epperson, 54 Texas, 224. In Elston v. Jasper, 45 Texas, 409, however, it is decided that an insane person, while actually under legal subsisting guardianship, and in support of the guardian's authority, is conclusively presumed incapable to contract, and his deed, as against his guardian, is absolutely void. As to whether this would be so in the case of a minor under legal and subsisting guardianship, sued without making his guardian a party, we shall not undertake to decide. Denni v. Elliott, 60 Texas, 339. But we are of opinion that such irregularity, coupled with the fact that no guardian ad litem was appointed to represent the interests of the minor in the litigation as required by law, and that no answer was filed for him, and that under such judgment his land, worth $6000, was sold for $427.42, presents such an equitable case as authorized the court, at the suit of the minor, instituted within a reasonable time after arriving at his majority, to set aside such proceedings and restore the land to him.

We think the court properly allowed the rents and profits of the land to be an offset against the amount paid by the purchaser at the sale under the judgment. Patrick v. Roach, 21 Texas, 251.

We are not called upon to decide whether or not the court, under the circumstances of this case, applied the proper measure of recovery in behalf of appellant against its warrantor, Webster, no errors having been assigned to this part of the judgment.

Upon the whole case we are of opinion that the judgment of the court below should be in all things affirmed, and it is so ordered.

*Affirmed.*

Delivered November 15, 1892.